BARNETT *v.* THE NORTHEASTERN RAILROAD COMPANY.

The testimony for the plaintiff as to the negligence of the defendant railroad company, and as to which company was his employer, · was sufficient to require the case to be submitted to the jury, and a nonsuit should not have been granted. (R.)

May 6, 1891.

Nonsuit. Railroads. Negligence. Master and servant. Parties. Before Judge HUTCHINS. Clarke superior court. October term, 1890.

The plaintiff sued for damages resulting from injuries sustained by him while working as car-coupler and train-hand for the railroad company; and after the

submission of his evidence, the defendant moved for a nonsuit on the grounds that he was guilty of contributory negligence, and that he had sued the Northeastern Railroad Co. when he should have sued the Richmond & Danville Railroad Co. The nonsuit was granted. The evidence tended to show the following:

The injuries were received at the Northeastern railroad depot at Athens, in October, 1886. It was his duty to make up a train, and to uncouple a flat car from the tender. He went between them (the engine and car both standing still), and as he was about to pull pin so as to uncouple, the engine came back and caught his right hand between the bumper and the tender. He did all he could to avoid the injury. It was an ordinary coupling. They had been using a drag-bar, which is four to six inches longer than a coupling-link. He knew when he went in that it was a coupling, but not whether it was a short link or what it was. He knew the drag-bar had been broken a day or two; they had made a trip and returned without it. He does not think the engine and car could have come together with the drag-bar in there. It was not necessary for him to put his hand between bumpers to get the pin, the head of it being on top of one of the bumpers. He does not think he pulled the pin. If the engine had not moved, he would have got the pin instead of getting his hand between the bumpers. He thinks the injury was caused by the engine coming back and pushing him and causing him to stumble and catching his hand; and that he would have been hurt even if the drag-bar had been there, it would have made no difference. The defendant furnished the coupling. The best of his recollection is, that he had uncoupled the link, that he had fully uncoupled the cars. He supposes the pin had dropped down or lay on the coupling. When the engine came back it pushed him and caused him to stum-

ble, and as he threw out his hand to avoid falling, it was caught between the bumpers. He does not think the drag-bar would have held them apart if it had been there; it might have done so if it had never been taken out of position; he does not know whether it was long enough to keep the cars from coming together. He was to give the signal for the train to move; they had no right to move it until he gave the signal, and he had the right to rely on their not doing so. If the engine had stood still, he would not have been hurt. He does not know that that particular link was used before; they had been using a link; it was all the road gave them. Either he or one Kane put it there; he does not remember which. It was necessary for the train to go, and they had to use the link. Links are frequently used in place of the drag-bar, because more convenient in making coupling where the bumpers are of unequal heights, not because it is less dangerous.

The plaintiff was employed in September, 1886, by one Cox to work with him on a train on which he was conductor on the Northeastern railroad. Plaintiff had written to Berkely, the superintendent of the Northeastern railroad and of the Richmond & Danville railroad, in the previous July, asking for a position. Cox did not say he had authority from Berkely. If the Richmond & Danville company was operating the Northeastern road, plaintiff did not know it. The train which hurt him went from Athens to Tallulah Falls and returned, a part of the way being over the track of the Richmond & Danville railroad; it had been so running for several years, and was called the Northeastern railroad. The cars and engines were marked "Northeastern." The plaintiff assisted the agent at Harmony Grove depot, and there wrote certain pages on the record of freight received, and made certain entries in the cash-book. He thinks he remitted the cash to the

treasurer of the Richmond & Danville company.   He
signed the Richmond & Danville pay-roll for his work
at Harmony Grove; may have been paid by check on
the Richmond & Danville company, does not recollect.
He was working on the Northeastern railroad, and un-
derstood that he was working for the Northeastern
company, though it seems, from the books and papers
above referred to, that he was working for the Rich-
mond & Danville.   The plaintiff also introduced news-
papers of November 23 and December 14, 1886, contain-
ing schedules of the Northeastern and Richmond &
Danville railroads, published separately, with testimony
that the former were inserted by authority of the North-
eastern company ; also reports of officers of that com-
pany for the year ending September 30, 1887, indicat-
ing a separate existence of that company, with a full
board of officers, Berkely being superintendent.   There
was also testimony showing the serious nature and ex-
tent of the plaintiff's injuries.

LUMPKIN & BURNETT and E. T. BROWN, for plaintiff.

CALHOUN, KING & SPALDING and J. T. PENDLETON, for
defendant.

SIMMONS, Justice.

Under the facts as disclosed by the record, the court
erred in granting a nonsuit in this case. The testimony
introduced by the plaintiff as to the negligence of the
company was, in our judgment, sufficient to put the de-
fendant upon its defence, and to require it to explain
the acts complained of by the plaintiff. The testimony
as to who was the employer of the plaintiff was also
sufficient to require it to be submitted to the jury.

*Judgment reversed.*